United States v. Michael Heinrich, No. 212723. Ms. Stern, good morning. Good morning. Good morning, and may it please the Court, Samantha Stern, Assistant Federal Public Defender, on behalf of Michael Heinrich. I'd like to ask you to consider the following. Do you dispute that the purpose of his posing these children was to take a picture of them? That is not the dispute that's at the heart of is really about whether there was purposeful mens rea with respect to the sexually explicit nature of these depictions. So counsel, in that regard, I'd appreciate your focusing on the language of the statute, because there are surrounding subsections that use the verb knowingly to describe the act. And in particular, the Supreme Court in excitement video is drawing the comparison between 2252 and 2251A, and looking at how knowingly placed at the outset of the statute in 2252A is ensuring that there is a requirement to know of both the nature of the depiction and of the age of the person involved. That is absent from our statute. Why shouldn't we look at the face of the statute and conclude that Congress made the decision deliberately to remove that sort of additional mens rea requirement that you have us read into the act itself? Your Honor, here we have an even stronger textual argument than was presented in excitement video, and that's because Congress has used the term purpose. The statute's text require that the defendant act for the purpose of producing any visual depiction of sexually explicit conduct. Of such conduct. Such conduct. Such is repeatedly used as a synonym for that, and it refers back to the any sexually explicit conduct. But it doesn't say the purpose has to be to produce any visual depiction of sexually explicit conduct. It's just whatever conduct he engineered. Of such conduct. Exactly right. But there's no dispute here that of such conduct clearly refers back to the term sexually explicit conduct, which appears in the earlier phrase. That this conduct was not sexually explicit. It was a sexually explicit conduct, was it not? That's not the issue here. The issue is whether he needs to have purpose with respect to the sexually explicit nature of the depiction. But it doesn't say that. It says any sexually explicit conduct for the purpose of producing a visual depiction of such sexually explicit conduct. And sexually explicit is an objective standard. So why does his belief, and I think you, in the hearing, you said that Section 2251A requires the government prove beyond a reasonable doubt that he intended to create to require an intent to create child pornography. Child pornography has been used at times in this case as a shorthand for sexually explicit conduct. I'm tying my argument here directly to the language of this statute and would focus your Honor's attention on the phrase for the purpose of producing any visual depiction of such conduct. Of such conduct. You've suggested that such means something other than that, but I don't I don't get that argument. Such refers to a type or a class and specifically sexually explicit conduct. But it's referring back to that phrase. Any sexually explicit conduct. If Congress had intended merely to refer to whatever conduct had been induced, I think the word that would have been more precise than such. Here, such imports this class of conduct, which is sexually explicit conduct. Wait a second. In 2251B, the first line, custody control a minor who knowingly permits such minor. There, such minor has to mean that minor, not minors in general. We're talking about 2251A. But if they used such as a synonym for that in the first line of 2251B, it's not unreasonable to read such as a synonym for that in 2251A, where the word such appears three times, I think. Such person is being used as a synonym for that person in the middle of it. Such visual depiction is being used as a synonym for that visual depiction. Such minor is is is means that minor in the line before it. So it shows up three times. It doesn't read like any of those three is referring to a general class of minors. It's referring to the particular minor, the particular person. And the such is the particular visual. There are four suches here. And the other three all read like they're referring to a particular instance. Why doesn't this one? I think right in context of 2251A, it is it is clear that it's referring to this class of conduct. But even if the text didn't get us there, Your Honor, and I submit that it does, we have the presumption of scienter, which has been applied time. There is a presumption that is not a strict liability crime. I read this. And first of all, that presumption doesn't apply like statutory rape, knowledge of age. You're not making an argument knowledge of age. So we have the question about how broadly the sex crimes against children, whether it's beyond that. But even setting that aside, the first line has intentional verbs. It has to be employ, use, persuade, induce, entice, of course. It can't be something he just stumbles into. And then we have in the third line with the intent. So it's to intend that the person engage in something. It's not just he that unintentionally happened or he happened across the minor in this posture. He does something intentional in the first line. He has an intent that the person minor engage in some particular conduct. And then we have the purpose of producing a visual depiction of such conduct. So this is not a statute without scienter. It has several other scienter protections in it. Why do we have to add another one? We're not adding. We submit you're not adding a vote. Why should we find that another one has been added on top of the three that are already expressed? You need to give the statute the meaning Congress intended. Congress used the word purpose. The Supreme Court has interpreted purpose to require that the defendant consciously desire the result. But I result here. Do you dispute that the purpose of his posing these children was to take a picture of the conduct they were engaging in? Do you dispute that? That's not the dispute. OK, but but that's what the purpose is stated in the statute. If you don't dispute that, then you're not disputed. It says for the purpose of producing any visual depiction. Your Honor, such conduct, the sexually explicit nature of these depictions is precisely what moves this conduct from innocent conduct to criminal conduct. That is precisely the type of element that the Supreme Court has said time and time again requires a presumption of scienter. But are you saying that this, that these pictures or that this conduct was not sexually explicit? That is not the argument. The argument is that he had to, if he didn't realize this was child pornography, if he thought this was pictures of innocence and beauty, then you get out of the statute. But I don't see how you read that in there. Maybe you need to be a little bit more explicit with how within the language of the statute, his his view of what this was matters. Where is it in the statute that his view and understanding of what this was matters? Your Honor, it's Congress's use of the term purpose, purpose of producing a visual, any visual depiction of such conduct, of such conduct that he understood to be conduct that was sexually explicit, but it wasn't really sexually explicit. It was innocent. Is that what it's supposed to read? I'm not sure I understood what your honor was just positing, but maybe we'll talk more about purpose. OK, you are hammering purpose. Purpose is a cognitive. It is a volitional. I have the desire to achieve this objective. It's not about motive, correct? Correct. But your strongest support is Crandon, which is a sentencing case which kind of jumbles together purpose, intent and motive. And I take this expert's testimony to be he didn't have a sexual motive. He wasn't motivated by lust here. He just thought it was beautiful. It's different from a purpose. So I don't even even here. I don't see how it gets you that far. We normally understand the purposes. You create this depiction. It doesn't matter whether a child pornographer who had no lust in the game would still be guilty of child pornography, right? An asexual child pornographer could still be guilty, correct? That's correct. All right. So the sexual motive isn't relevant. And yet all the expert testimony here and his own story about what his motive was, his motive wasn't a lustful one. It was some more general aesthetic one. But that's not relevant to purpose analysis. It doesn't simply go to motive, your honor. It goes to whether he viewed he viewed the depictions that were intended to be produced, whether he viewed those as sexually explicit in nature. So the motive question is is related, but it's not the same. And the Crandon case has a long history of considering motive. And we're not at sentencing here. And this is a criminal statute. And that case said was that the lower court refused any evidence as to purpose. And all we said was there's an issue as to purpose. Certainly have to allow evidence as to purpose. You can't prohibit it. And here the court wholly excluded all relative to purpose of producing sexually explicit images because it viewed the purpose clause as the purpose was to create a visual depiction. That's the purpose, a visual depiction of it. Correct. And we believe that's a misreading of the statute. Again, I can't I just don't know. I don't know. Tell me how you how you read such conduct, what such conduct, the believes was child pornography. Is that the way you're reading such conduct? Your Honor is somewhat getting at what would the jury instruction be in this case if we're going to give this statute the effect that that we believe it has? Yeah. The government must prove beyond a reasonable doubt that it was defendants conscious desire to produce depictions that were sexually explicit in nature. Could I ask you about what you're familiar with them? We've adopted them in Villard of the yard. So is there any reason why they shouldn't govern here? And if they do govern, which of these factors is this relevant to and how this court has adopted the DOS factors and the DOS factors are considered in the context of determining whether a lascivious exhibition qualifies as sexually explicit conduct under this statute for purposes of analyzing the actus reus of the offense. It's an objective test. What the interpretation of the statute requires as to purpose and the sexually explicit nature of these depictions, it can be informed by those DOS factors when it comes to a case of lascivious exhibition. And this is such a case. One of the DOS factors, it goes to whether or not the depictions are designed or intended to sexually arouse the viewer. I think that that is a related prong to this inquiry. But you're not arguing that imports subjective intent. That's right. We think that the word purpose, which modifies the phrase of such conduct and clearly refers back to sexually explicit conduct, we think it does that work. And whatever additional work needs to be done, we really think the This is exactly the element, the sexually explicit nature, both as to the actus reus and to the mens rea of this offense, which distinguishes innocent First Amendment protected conduct from unlawful conduct. And by the way, it carries a 15-year mandatory minimum. So it makes sense that Congress would have chosen to impose this heightened standard of mens rea in this instance. I understand your argument. I guess I'm still struggling with the text of the statute. Because if what you're asking us to read into the statute is essentially that he knew the sexually explicit nature of the conduct. That's exactly what the court was reading into the term knowingly that preceded the various verbs in excitement and video. And it pointed out that that was absent from this statute in contrast to 2252. So, since we don't have that word here, how do we take from the text of the statute that Congress intended that there be knowledge of the nature of the conduct, not just a purpose of making a photograph of whatever objectively would be ascertained to constitute sexually explicit conduct? The mens rea here that we have in this statute is even stronger. It's purpose. Purpose is to the photo. And the Supreme Court has pointed to the presence or absence of the term knowingly as what would get to the reading you'd like us to have, which is knowledge of the nature of the conduct. We don't have that here. So, in the absence of knowingly, how can you import that knowledge from the purpose of depiction? When you look at those presumption of scienter cases, it's incredible the work that the presumption does. It has led the court to favor an approach that is not grammatically correct, extending mens rea like knowingly to other portions of the statute where it doesn't even appear. We're asking for it to do a lot less work in this case. And I would point your honors as well to rehafe. These are cases where the court is not going with the grammatically correct interpretation of the statute because it's recognizing that this presumption does quite a bit of work. And Congress here used the term purpose, which is a heightened member at mens rea standard as to knowingly. This court can absolutely give that effect when combined with the presumption of scienter. We even need that here to avoid the concerns about sweeping in protected conduct, innocent conduct. You know, that's that's to say, don't the dust factors do that to us? For us in the definition of what objectively constitutes sexually explicit conduct with with that with the dust factors, why do we have to worry about the statute, even if we don't read knowledge of the nature of the conduct into it, sweeping in protected expression? The dust factors don't do the work because essentially not requiring mens rea as to the means that you are sweeping in, you're making strictly liable anyone who intends to take a photograph, for example. We could say, though, is we could say the government bears the burden of proving beyond a reasonable doubt sexually explicit. If there's any reasonable doubt, someone out there might reasonably think this is just innocent. Then the jury has to acquit. So in essence, you're giving a First Amendment right to be completely unreasonable. Well, the dust factors impose an objective standard and and really they don't do the work of getting us there because they don't consider what the person consciously intended when they set out to take the photos. Take, for example, the case of a parent who takes a photo of their child's genitals for the pediatrician. I do think that if you do not also require mens rea with respect to this element, you do run the risk of criminalizing a wide range of innocent and otherwise First Amendment protected conduct. On the other hand, if you make it depend upon the personal view of the lasciviousness or the lewdness, the obscenity, then every defendant is going to say, oh, but I thought this was wonderful. And in the Supreme Court and Hamlin said the evils Congress sought to the belief of the accused as to what was obscene, lewd or lascivious was recognized as the test. Isn't sexually explicit an objective term? It is for purposes of analyzing. If it is, then that's then that's all there is. If it is an objective test and it's the purpose of producing a visual depiction of objectively sexually explicit conduct, then how to how does your purpose get you get you where you want to get? It must be the defendant's conscious object to create sexually explicit images. But even your jury instruction doesn't say that. That is what my jury instruction says. The government must move beyond a reasonable doubt that the defendant acted with the conscious purpose of creating a sexually explicit depictions. OK, he had a conscious purpose of creating the depiction of objectively sexually explicit material. And the jury would be permitted to consider the content of the depictions and making that determination. Yes, the defendant can raise his subjective intent as a defense in any case. And then and the jury would weigh the way the credibility of that defense in any good. But you agree we can insert the word objectively sexually explicit. Objectively sexually explicit has to do with whether or not the actus reus of the offense is met for purposes of mens rea. That question becomes a question that has a subjective overlay. I ask you, let's say the district court, you know, why isn't this within the district court's rule 403 discretion? Like, yeah, I could see a theoretical relevance to this, but it's far more likely to confuse the jury. Why is that not a ground for keeping it out and thus affirming, even if even if you're right that, you know, in theory, there's some subjective component here? The district court's 403 ruling did not consider this evidence to be relevant at all because of the improper 2251A interpretation. Because of that, the court cannot do a proper balancing because it can't really acknowledge the probative effect of this proffered testimony. And I would submit that this proffered testimony was relevant in two key respects. First, the information supplied about Mr. Heinrich's psychosexual profile, the fact that Dr. Schwartz concluded that he did not have a sexual interest in children, that he exhibited signs of sexual aversion disorder. But you you've agreed that the asexual pornographer could still be guilty. Yes. And that's why this evidence doesn't run afoul of 704B. It doesn't invade the jury's province to determine whether on this particular occasion he acted with the requisite intent. But it makes it less likely. Evidence isn't even consistent. If asexual pornography be guilty, then his lack of sexual interest in the child doesn't really speak to the issue of what he was creating. You know, he can find it's beautiful and still have intended to create sexual depictions. His motive is not dispositive here. If he was not engaging in sexual contact with a minor and he does not have a sexual interest in children, that's relevant to assessing whether or not he consciously intended to create sexually explicit depictions in certain cases. In certain cases, it might it simply may not be credible because of the nature of the images themselves or because the case involves an actual sexual assault of a victim. But but in when we when we consider what's relevant to the question of mens rea, it's a much broader inquiry than simply, well, what did the government have to prove to prove that he's guilty? You know, the relevancy standard under 401 is much is much less of a because these this Profford testimony about his sexual profile was relevant to how he may have to what he was thinking that day when he engaged with the minors and and could have been properly limited pursuant to 704 B. If this court agrees with us about intent, you cannot affirm on 403 grounds because that 403 balancing was so tied to the erroneous 2251 interpretation. I'll reserve my remaining time. Thank you. Joe. Good morning, Your Honors, and may it please the court, Adam Hallowell for the United States. The heart of this appeal is the mens rea required by Section 2255 2251 A. The government's interpretation follows the text. Did the defendant use or induce a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of that conduct? That interpretation fulfills Congress's purpose of protecting children from abuse. With the reading that you're you're asking of us, what do you do with the the scenario of a parent who's taking the photograph for the pediatrician? Sure, Your Honor, you would connect that purpose phrase to the intentional verbs that it follows in the statute. Did that parent use or induce the minor to engage in sexually explicit conduct? And our argument would be for two reasons that parent wouldn't have done that. First of all, because the parent would be inducing the child to engage in a medical examination, not a lascivious exhibition of his or her genitals. And secondly, because under the DOST factors, such a photo almost certainly would not qualify as sexually explicit conduct. Well, I understand your second answer to go to the objective criteria that help us understand what sexually explicit conduct is. But the first part of your answer sounds like you are reverting to subjective intent of the parent and that the concept of purpose is tied to those verbs at the outset. Well, that is those verbs have to be satisfied and we have to prove beyond a reasonable doubt that the defendant did use, induce, employ, persuade, entice, coerce. I'll use use or induce as shorthand for those six verbs, but they're all important. A parent who has a child doesn't want to sit still, but has, you know, a rash or blisters that the parent wants to send to the pediatrician to get feedback, you know, is coercing the child or inducing the child to sit still and position themselves in a certain way. Doesn't that take care of the verb of the using or employing? It might be inducement in some circumstances, Your Honor, but even then you then look at was this engaging in the sexually explicit conduct? Was there was there something something else going on here? If a doctor requires somebody to reveal their genitals for medical examination, that's not something that is engaging in a lascivious conduct. Well, that's you're putting a lot of weight on lasciviousness. We are. And it is possible that there might be a situation that could wrongly have a parent guilty of this. And then you just have to rely on the prosecutor not to prosecute that. Well, again, you'd ask, was this something that the parent induced the child to engage in? I mean, again, if you have if you have a parent who takes some action that in most happens to the parent is still going to have the defense of I didn't induce the child to engage in that lascivious conduct. It's not was there lascivious conduct? It's do these intentional verbs. Am I right that the main safeguard is going to be the DOS factors here? We think we think the first phrase, the intentional verbs are an equally important safeguard, but the DOS factors are doing a lot of work. Judge Krause's hypo involves some coercing or certainly using. Now, you have to engage in conduct that won't always be true. But if you have to pose the child to spread the legs or something, let's look at the DOS factors. The focal point could be the child's genitalia. Now, maybe the second, the setting of the visual depiction isn't that subjective. The third, the child might be in an unnatural pose. The fourth, the child might be nude or partially clothed. So you have two or three factors. And our court has said you need at least two of them. So if how can we be confident that the jury is going to get it right and what should we what should we be saying in a jury instruction that will ensure that these kinds of, you know, examinations of rashes or blisters by, you know, babysitters or caregivers which are used for telemedicine are not going to get swept up? What should we say about those other factors to guard against that danger? Well, in a jury instruction, the court should say what this court said in Vallard, that the DOS factors are important. They're not authoritative. They're a guide to the underlying question of was this exhibition lascivious? Was it designed to, does it have the effect of arousing sexual desire? And a jury is going to be able to make that distinction between something that is medically necessary, something that is medically appropriate and something like the pictures in this record, which Mr. Heinrich has never disputed, satisfy the DOS factors, clearly satisfy the DOS factors and which Mr. Heinrich clearly used and induced the minors to engage in conduct for the purpose of creating those pictures. That's the distinction between this scenario and the expert evidence that Mr. Heinrich is trying to admit here and the telemedicine hypothetical. So that's, and you know, this court has been aware of this problem in many prior cases involving 2251, not so much the telemedicine issue, but the innocent picture of a child in a bathtub. Knox talks about this, several other cases, Larkin as well, I think, have examined photographs and have really gone through the DOS factors with some granularity and said, this is why in Larkin, for example, we believe that these photos properly qualified as definition of the word lascivious and under the DOS factors. And you'll note in Larkin that the court is looking at all of them. And it is, it is a focus of the objective quality of the photograph, right? It's not based on, you know, what some person who finds the photograph later on is thinking. But in Larkin, the court does phrase the sixth DOX factor in terms of, you know, we're allowed to think about what is the person who took this photograph doing with this photograph when she then immediately goes online and distributes it to people that she knows are sexually interested in the photograph. Those verbs intended or designed. Let's talk about those. Yes. To what extent are those purely kind of objective, abstracted from any particular person who's involved? And to what extent are we looking somewhat at what the parent or, you know, Mr. Heinrich or Mr. Heinrich is doing in taking the picture? We know from Villard-Russell's to look at the viewer, but to what extent intended or designed invite us to look at the taker of the picture's mind? I think based on Larkin, Larkin clearly says that the taker's intention and the taker's actions are relevant. I mean, that's all the way through Larkin's discussion of the DOS factors. It says some of the first five point in one direction, some of the first five point in another direction, you know, says that the intention to elicit a sexual response is, you know, really one of the driving motivations of finding that those two photographs are lascivious in DOS. And again, I do want to. Why doesn't that put their expert testimony front and center? Because their claim is that Mr. Heinrich had a different intent. Well, that's it's a very different question from what Mr. Heinrich is offering here, because, again, they've conceded on page five of their opening brief that these pictures not only are lascivious, but clearly met the definition of the DOS factors. They are not disputing that. And they've never disputed that. Mr. Heinrich's expert testimony wasn't at all directed at the DOS factors, didn't examine the photographs themselves. In fact, that's one of the key flaws. Dr. Schwartz never even considered the photographs. But you're telling us that the sixth DOS factor has us looking back to subjective intent of the taker and that that is central to the determination about whether it's sexually explicit conduct. I don't know. So if we're if if DOS points us back to subjective intent and is the government, the government conceives the subjective intent of of the taker is relevant, then how is there not relevance to expert testimony saying that he has a different intent? Well, I think it might be sometimes relevant in a close case. And I think Larkin is a closer case as to lasciviousness than the photographs in the record. In this case, that's the province of the jury then, isn't it? Well, not if they concede, as they have, that the photos meet the DOS factors and are lascivious and that he used or induced these two three and four year old victims to engage in sexually explicit conduct. If the only question that he's seeking to introduce expert testimony about is what was the motivation of Mr. Heinrich when he was taking these photos, what was the internal meaning of these photos to him? And that's how that's what that's what Dr. Schwartz said was his central referral question. Did he intend to create child pornography or did the photos have a different meaning to him? And as several of you have pointed out, that leaves the asexual child pornographer, which is an entirely culpable and entirely proper defendant in this case, as as another possible explanation for what happened here. Again, 2251 doesn't require any lustful motive in the person who's taking the photographs. It can be someone say that that subjective intent is not relevant. But you were saying a moment ago that subjective intent is relevant. Subjective intent might in some cases be relevant to the DOS factors, but it's not relevant to the purpose phrase here, which is all that the expert testimony was purporting to go to. Were these pictures as subjective intent is relevant. What was his purpose? His purpose was to take a picture. His purpose was to take a subjective intent, but that's as far as it goes. I've assumed precisely Judge Rendell. And that I mean, as as has been clear from the start of the argument, he has not disputed that he had the purpose when he induced this conduct, induced the minus from engaging in conduct of taking a picture. I mean, no, no reasonable jury could conclude otherwise. And he was traveling to a different family's house. He took his own camera, not a smartphone, an actual camera. And on two separate occasions, while he's alone with these children who are not related to him, ages four and three, is posing them to engage in photos, some of which, again, are in the record. I think from the Palomino case where they're in a sexual relationship and 43 pictures are taken, two of which are sexually explicit. Was it was the conduct for the purpose of the picture or the conduct was there and then the picture? I mean, there there at least there's an issue. Exactly. That's that's what the court that's what the court said in the Palomino case. Now, in that case, you know, government's argument at least was that wasn't a relationship. It was abuse. But there are other cases that look closer like a relationship. I mean, the McCauley case is one that comes to mind. Even even Crandon is a more similar factual scenario. Again, none of that happened here. What do you say about Crandon? Crandon is the best case. Crandon is the best case for them. But Crandon is pure dicta for the proposition that they want to rely on, because Crandon, as Judge Rendell again said, was was dealing with a district court that did not consider purpose at all when it was dealing with the sentencing guideline, applying the sentencing guideline that involved there. And, you know, Crandon goes back and forth between is it the purpose of is it the purpose of inducing the conduct, as we argue here as to this statute, or is it the purpose of taking the photographs? And in the end, all Crandon says is the district court has to consider Mr. Crandon's mental state in some way before it can apply this enhancement. And so anything beyond that is dicta. If you look at the Lee and Smith cases from this court, they're both unpublished, but they they're much more recent than Crandon. And they show this is clearly still up in the air at best for Mr. Heinrich as to what the mens rea of 2251 is. And another point I'd make, Judge Bevis, is that the text which you were focusing on of the guideline in Crandon is slightly different from the text of this statute. And this statute's text is actually even stronger for us in supporting the government's reading, because, first of all, it refers to any visual depiction of such conduct. And the guideline in Crandon referred to just a visual depiction. And so that's slightly more slightly more emphasis that was this for the purpose of producing any kind of visual depiction. And then, as we talked about earlier, if you look at the text, the word such very often refers back to the specific item that was referred to earlier in a statute. It can be synonymous with that. You don't even need to look at 2251 B. If you look at the jurisdictional hook at the end of 2251 A, you'll see such visual depiction, that visual depiction, such visual depiction. They're being used synonymously. So such, just as it is elsewhere in 2251 A, is being used to refer to that conduct, just what sexual conduct did the defendant intentionally employ, use, persuade, induce, entice, or coerce any minor to engage in. And so for that reason, and on the entirely separate grounds of Rule 702 and Daubert, the district court correctly excluded the expert testimony in this case. But Daubert wasn't determinative below. We raised Daubert below. The court did not need to reach that issue, but it's an alternative ground on which this court could affirm. If your view is that there is no relevance of this opinion, then we really don't get to 403 or 704, do we? Because they assume the relevance of what Mr. Schwartz. They do, yes. Under, under, given that there's no relevance, and especially given the Pollat case, you know, there's no way that this expert testimony as to mental state could have been relevant to the proper mental state that's required by, by 2251. But of course, if you get to 403, it would be unduly prejudicial. The top line conclusion that he's not intending to produce child pornography, that falls under 704. But 403 assumes it's probative. He said probative values outweighed. Well, here, if you say it's not probative, you don't. Of course. Of course. Even if this court were to think, which it shouldn't, that there's some negligible probative value, it would be substantially outweighed. It is good to take a look back at the language of the statute. And we have any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in any sexually explicit conduct. Well, why doesn't the two do work of importing an additional layer of mens rea, separate from the for purpose of? Why isn't that, in essence, in order to? Well, it requires, I think, I think it does do some work, Your Honor. It's requiring that, you know, this, the first intentional verb that you have, whether it's an inducement, persuasion, a use, anything. You know, does that, you know, does it require, you know, is that linked to the engaging in the sexual conduct that occurs? You know, it can't just, it can't be, you know, some kind of, you know, lengthy chain of causation between, you know, the use, the action by the defendant that ultimately ends up in resulting the, in the sexually explicit conduct that occurs. There has to be some, some connection between those two. So that a casual, let's say a child, well, and that's what he actually said here, that these children did this themselves. So if there's no action by the defendant to bring about this conduct, he would have a pass, if you will? Absolutely. Use is pretty broad. Well, I mean, you know, as Judge Boudin said in the Ortiz-Growlow case, if you have a security camera that is mechanically picking up a random act, the statute doesn't imply because there's no, you know, none of these intentional verbs apply. There's no act, there's no inducement. There's no use by the defendant. It also seemed that if, say, a defendant walks through a locker room or something and surprises someone and takes a Zoom picture of a child, it may be disgusting, it may be sexually explicit, but it's not clear that the person has employed or used the child, the person has to do something with the child to create the pornography. You'd have to look at the actions that that defendant took, and you'd have to look at whether they were, you know, inducing or using, you know, a minor to engage in sexually explicit conduct. You know, maybe not with 100% certainty that sexual conduct would occur, but, you know, certainly with some intent that something possibly happened. Like peeping Tom in a, like in a dressing room in a store or something. Sure. I don't think that would apply. Well, if it's somebody who's setting up hidden cameras, a surreptitious recording case, you know, in an area where the person believes, the person reasonably believes that sexual conduct is going to occur. Okay, if sexual conduct, but in a dressing room, the person's not engaging in any conduct. So it doesn't look like this is going to catch an ordinary peeping Tom situation. Well, it might if the cameras are placed to record something that would be a lascivious exhibition, you know, if the person ordinarily knew they were there. And again, this is not something that's at issue in this case, because what we have here, there's a concession as to the lasciviousness. And as we can see in the photographs, what Mr. Heinrich claimed happened was not at all what actually happened here. He's posing these photographs. We argue that this court should affirm. Can you talk to us also about the meaning of producing here? We've been discussing the statute as if it's said for the purpose of taking a photo or taking a visual depiction. But producing has a particular definition. Not so helpfully says producing means producing, but in addition to that means directing, manufacturing, issuing, publishing or advertising. What what does that do? And as we give thought to what a proper jury instruction might look like, where would this part of the definition come into play? I mean, in a case where it applied, you would start with the language of the statute. You would have to. And you'd say, you know, are these other, you know, are these other verbs directing, manufacturing, issuing, publishing or advertising? Are they something that that applies in this case? Now, again, you would go back to you would go back to was there employment, use, persuasion, inducement, enticement, coercion by this definition? And then you would go back to the defendant himself or herself. And so that's going to, you know, that's going to sweep away from 2251 downstream viewers or people who are reposting a photograph online or something like that. But it means in a like a session that the person who has the camera isn't the only person. If there's somebody, a director or something else, if there's I think I think that's right. If there's if there's a larger scale organization or conspiracy or even just two people who are agreeing that something happened, then you can't kind of divide and conquer the liability here, the production. Does this definition of producing exclude the hypothetical that Judge Rendell raised earlier? Which hypothetical was that, Your Honor? For example, of a parent who is sending something to the pediatrician? I think I think it does for the same reasons that I gave earlier. I mean, we weren't we weren't resting on a limited definition of producing there. I think clearly a visual depiction of something is being produced in that hypothetical. The question is, is it lascivious conduct? And then is, you know, is the intentional requirement from the first part of the statute satisfied? Are you using or inducing the minor to engage in that lascivious exhibition? I think we have to acknowledge that there may be some situations where an unwitting person, you know, if it is lascivious and, you know, coerces the person because they're, you know, kids moving all around, it might it might happen. And then you just kind of hope that the prosecutor is not going to not going to follow through. I mean, you know, certainly prosecutorial discretion plays a role in any statute. And I think you also have to rely on the role of a jury here. You could go to a jury and say this was not lascivious conduct. I didn't induce or use any minor to engage in any sexual explicit conduct. And again, Mr. Heinrich had that right, could have asked a jury to examine the entire statutory definition here and instead enter the conditional guilty plea based solely on the expert evidence that is at issue here. The district judge could also make that determination at various points. Absolutely. Absolutely. That is an additional protection. Yes, sir. Thank you. Just a few brief points in rebuttal. This court's interpretation of 2251A will apply equally in this case and two cases moving forward as to whether the actus reus of this offense does the work that mens rea should I submit it doesn't. And that's because Congress has used the term use in its many ways that someone can violate the statute. Use does not require a whole lot other than the taking of the photo itself. If the child is depicted and then once you have the overlay of the DOST factors defining lascivious conduct, essentially, if you have a photo which really just focuses on a child's genitals. Child has to be engaging in conduct. So it's not just a picture of genitals. It's a child doing something. Your Honor, that's not how the statute has been applied. It really doesn't require a whole lot much of an inducement because the photos are so often used as as sort of a stand in for determining whether the conduct is sexual. But there has to be conduct. We could easily write here and say just a child who's not doing anything isn't covered. But the problem you have is your client was using his hands to spread the child's genitals. There's no question that there's conduct going on here. We dispute that characterization. This record is full of characterizations of these images that have been made by prosecutors rather than looking at the hands are on one of the children. Correct. In one of the photos. I would agree with that characterization. You're contesting that the nature of these photos. There have been many characterizations that are made throughout briefing in this case. New characterizations offered now on appeal. I simply know we dispute those characterizations, especially the ones that were not raised before. The pictures are what they are exactly. But certainly there are situations in this case is one of them where. You know, certainly you can see the way this statute is applied in circumstances where the child is not actively engaged doing much of anything. And so and so that is why this is it's so critically important that this factor, the sexually explicit nature of the conduct, any images that result that the defendant have with respect to that element as well, that this court does not apply strict liability. You can consider all of the many permutations where this imposition of a mens rea requirement might make a real difference. To be clear, the when we look at the definition of sexually explicit conduct. You imagine with your argument have less concern about a one through four. I did involve. Conduct, intercourse, bestiality, masturbation, sadistic or masochistic abuse. It's really five. The lascivious exhibition that is is the concern for you because. Their exhibition alone could give rise to liability. That's correct, your honor. I think I mean, obviously, this court's interpretation will apply to any of those circumstances, but I think the circumstances where this issue will potentially arise is most often in this lascivious exhibition context where it's really a matter of looking at these images and the conduct underlying them isn't necessarily sexual, but it's the way the depictions are made that makes them makes it a sexual situation. I'm opposing counsel argued that Dr. Schwartz did not consider the images in rendering his opinions. That's incorrect. I'd point your honors to Appendix 268. Reviewing the images was part of his review. And as for the arguments under 702 and Daubert, the district court never reached 702, never held a Daubert hearing, never developed the record as to the relevant Daubert factors. This cannot be a basis for affirmance in this case. This is precisely the type of question requiring preliminary fact finding by the district court, record development, exercise of discretion. That's not appropriate for this court to undertake in the first instance. And I would note that opposing counsel doesn't cite a single precedential case from this court or really any other circuit that would support the exclusion of the testing methods and other evidence relied upon by Dr. Schwartz in this case. All the more reason why affirmance on 702 grounds would be really inappropriate here. So we would ask that you adopt our reading of 2251A, reverse the district court's ruling and remand for a new trial. Thank you. Thank you. Thanks to both counsel. And we will have a transcript made by counsel, costs from the government. And with that, we are adjourned for today and take this case under advisement. Thank you.